# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| CHERYL GUSTIN, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:09-cv-1452-TWP-TAB |
| THE SCHNEIDER CORPORATION, | ) |
| Defendant. | ) |

## ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant Schneider Corporation's ("Schneider") Motion for Summary Judgment. Plaintiff Cheryl Gustin ("Gustin") filed suit in this Court alleging that her former employer discriminated against her in violation of the Age Discrimination in Employment Act ("ADEA"). For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment (Dkt. 28).

## I. BACKGROUND

### A. Schneider Hires Gustin

Gustin was born in 1965 and has devoted her career to marketing. In January 2005, Schneider hired Gustin – 39 at the time – as a Marketing Coordinator, earning $47,000.00 per year. Schneider is a full service civil engineering and land surveying firm that provides services to both the public and private sectors. Schneider employs a range of professionals, including engineers, surveyors, computer specialists, architects, landscape architects, programmers, and marketing/sales specialists.

Gustin's initial job responsibilities entailed working with trade shows and completing marketing-related projects. Marketing Coordinators like Gustin were considered the "worker bees" of the department and were expected to complete most day-to-day tasks, such as putting

together proposals and creating marketing materials. Matt Maudlin ("Maudlin"), the Director of Marketing, was Gustin's supervisor at this time. Maudlin reported directly to one of Schneider's Executive Vice-Presidents, Terry Baker ("Baker").

Overall, Gustin's first year with Schneider went well. She was promoted to Marketing Manager, which came with elevated pay ($8,000.00) and new responsibilities related to developing and implementing marketing plans, overseeing Marketing Coordinators, and directing business development. In her new role, Gustin also had to work collaboratively with peers.

**B.     The Performance Review**

Gustin experienced a professional setback in August 2006, when she received a less than stellar performance review. Maudlin administered the review. Specifically, Gustin failed to fully meet expectations in 5 of the 13 measured categories (scoring a 2 out of 5) and only met expectations (scoring a 3 out of 5) in all remaining categories. Consequently, Gustin was placed on a 90-day performance improvement plan. Performance deficiencies aside, Gustin received a 3% raise, increasing her salary to $56,649.98.

**C.     Gustin's Request for Educational Assistance**

Schneider maintains an Educational Assistance policy, under which it reimburses certain tuition expenses for employees. However, approval for reimbursement is not a foregone conclusion. The coursework must relate to Schneider-specific disciplines and must enhance the employee's professional prospects with the company. Prior to approval, employees must gain admission into the course and submit an Educational Assistance Request Form, which must be approved by the Education Committee.

In August 2006, at the age of 41, Gustin submitted a request form seeking reimbursement for the cost of an online class at IUPUI that was a prerequisite to the MBA program and generally referenced the MBA program. At the time, Gustin had been accepted into the prerequisite course, but not the MBA program. Schneider approved the request for the prerequisite course and deferred her request for the MBA program. Ultimately, though, Gustin opted not to take the prerequisite course due to her rigorous workload. In light of Gustin's inaction with respect to the prerequisite course, Schneider later denied Gustin's broader request involving the MBA program. By contrast, everyone else that Schneider approved for graduate work assistance had (at least conditionally) been accepted into the graduate program at the time of the request. Moreover, the Education Committee did not consider an MBA to be aligned with Gustin's career development path, given that no Marketing or Sales Support position required an MBA. Thus, Gustin was unable to secure tuition assistance to enroll in an MBA program.

Also around this time, the real estate market began to decline and Schneider began revamping its overall education policy to control costs by ensuring a tight fit between the coursework and Schneider's objectives. Under the heightened scrutiny of the revised policy, an employee needed to obtain the recommendation of his/her supervisor and show the Education Committee that the classes sought were tailored to the employee's career advancement at Schneider. The revised policy also imposed a cap on the amount of annual tuition reimbursement an employee could receive ($9,000.00) and limited reimbursement for graduate level courses to 50% of actual tuition. For Gustin's MBA request, Gustin did not receive the recommendation of her supervisor, who believed that Gustin's career with Schneider would best be served by improving her performance and attitude.

3

### D. Gustin Moves to Sales

In May 2007, Schneider's Senior Sales Support Manager, Anna Tyszkiewicz ("Tyszkiewicz"), took maternity leave. To shore up the division in Tyszkiewicz's absence, the company asked numerous individuals to lend a hand. In turn, Gustin took on a temporary dual role of completing carryover duties in Marketing and working in a managerial capacity in Sales Support. Distinct from but related to Marketing, Sales Support personnel prepared proposals, made presentations to compete for work, and assisted in trade show preparations.

During this period, Maudlin resolved that he no longer needed a separate Marketing Manager because he could provide sufficient oversight of that group. Consequently, when Tyszkiewicz returned in August 2007, Gustin remained in Sales Support and Gustin began reporting to Tyszkiewicz. Additionally, Gustin continued to have some carryover duties from Marketing. In terms of Sales Support, Gustin focused on public sector tasks, such as securing bids from public entities or for public works projects. In effect, Gustin served as a middle-tier manager between Tyszkiewicz and the Sales Coordinators.

The department had a goal of completing performance reviews by the fall of each year. Gustin alleges her evaluation did not take place because Tyszkiewicz "was not familiar with the job". However, Tyszkiewicz, just weeks after returning from maternity leave, expressed concerns to Baker about her ability to adequately assess Gustin through a performance review, given her limited exposure to Gustin's work. Tyszkiewicz expressed similar concerns about Megan Stacker and Erin Baldwin, who, like Gustin, were also new to Sales Support. In light of these concerns, Baker recommended that a formal review be tabled until Tyszkiewicz could better gauge Gustin's performance. This delay was not altogether unusual; in fact, Tyszkiewicz

did not receive her own review until January/February 2008. However, Tyszkiewicz never reviewed either Gustin or Baldwin because both were laid off in January 2008.

**E.     The Schneider Young Professionals**

Near the end of Gustin's tenure with Schneider, a non-management employee, Colleen Ruhter, formed a social group called the Schneider Young Professionals ("SYP"). The group's events were open to all employees, but SYP primarily consisted of younger employees. However, the SYP email distribution list did include Amy Brown, a 45 year old. Schneider considered SYP to be purely social. In November 2007, Schneider's Chief Executive Officer, Victoria Schneider Temple, sent an email to all employees reminding them of the FallFunFest sponsored by SYP and encouraged all Schneider employees to participate. Apparently, though, some of the older Schneider workers were irked by the youth-centric group, jokingly broaching the idea of creating an alternative group called the "Schneider Old Curmudgeons."

According to Gustin, SYP was characteristic of an overall shift in Schneider's corporate culture, which began to focus on cultivating a more youthful image. By way of affidavit, Gustin claims that Schneider increased recruiting efforts on college campuses and tailored marketing campaigns to younger applicants. For instance, Schneider provided "give away" items at recruiting events, such as bottle openers and beer can koozies.[1]

**F.     January 2008 Layoff**

In December 2007 and January 2008, economic forces drove Schneider to reevaluate its budget and implement drastic cost-cutting measures. Accordingly, President Tom Vanneman requested that each department identify candidates for layoff. Baker, in charge of both Marketing and Sales Support, determined that Sales Support was best positioned to absorb

---

[1] To be fair, any beer enthusiast with sensitive hands – young or old – appreciates a nice koozy.

layoffs. Considering a range of variables, Baker also determined that Tyszkiewicz was best suited to lead Sales Support. After his analysis, Baker asked Tyszkiewicz to provide suggestions as to which two employees Sales Support could afford to lose. Tyszkiewicz concluded that Gustin and Baldwin were the most suitable, given that their primary areas of focus had been hit hardest by the economy. Tyszkiewicz's decision was reinforced by Gustin's subpar work performance and the fact that her middle-tier manager position was largely superfluous. Baker reviewed Tyszkiewicz's recommendations, independently agreed, and passed the recommendations along to Schneider's executive team, which adopted them. On January 24, 2008, Tyszkiewicz and Baker met with Gustin and Baldwin and informed them that they would be losing their jobs. At the time of her layoff, Gustin was 42 years old.

Statistically, both the young and old alike were casualties of Schneider's January 2008 layoffs. In total, Schneider laid off 42 employees and, of these, 26 were under age 40. Likewise, the average age of Schneider's workforce remained the same before and after the January layoffs (37.3). And, unfortunately, the January 2008 layoffs were hardly a panacea; Schneider's financial woes continued, triggering more rounds of layoffs. By mid-2009, not a single employee Gustin working within the Marketing and Sales Support Departments – including Maudlin and Tyszkiewicz – remained with Schneider. By the end of 2009, Schneider had half as many employees as it did in 2006 and, as of November 2010, Schneider employed roughly one-third the number of employees it employed in 2006. Further, as of November 2010, the average age of Schneider's workforce was approximately 42 years old. Additional facts are added below as needed.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## III. DISCUSSION

The ADEA prohibits employers from engaging in discrimination "because of [an] individual's age." 29 U.S.C. § 623(a)(1). This prohibition is "limited to individuals who are at least 40 years of age." 29 U.S.C. § 631(a). To succeed under the ADEA, a plaintiff must establish that the employer's adverse decision would not have occurred "but for [the] employer's

intentional age-based discrimination." *Chiaramonte*, 129 F.3d at 396. A plaintiff can prove age discrimination through either the direct method of proof or the indirect method of proof. *Id.* Here, Gustin attempts to avert summary judgment using both methods. Moreover, Gustin premises her age discrimination claim on three distinct adverse employment actions: (1) her 2008 layoff, (2) Schneider's denial of her 2006 educational assistance request, and (3) her failure to receive a pay increase in Fall 2007 due to Tyszkiewicz's delay in filling out a performance evaluation.

**A.     The Indirect Method**

A plaintiff suing for age discrimination "may utilize the indirect, burden-shifting method of proof for Title VII cases." *Id.* Specifically, to demonstrate a *prima facie* case, Gustin must show: (1) she is a member of a protected class (which she is, being over 40); (2) her performance was meeting Schneider's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees outside of her protected class. *Martino v. MCI Communications Services, Inc.*, 574 F.3d 447, 453 (7th Cir. 2009). The parties do not seriously dispute prongs (1) through (3); prong (4), by contrast is hotly contested.

Whether two employees are similarly situated "is a common sense inquiry that depends on the employment context." *Filar v. Board of Educ. of City of Chicago*, 526 F.3d 1054, 1061 (7th Cir. 2008) (citation omitted). Similarly situated employees must be directly comparable in "all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (citation omitted). Relevant factors for making this determination include "whether the employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other

qualifications…." *Bio v. Fed. Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005) (citation omitted). Here, the Court's analysis of each adverse employment action effectively begins and ends with the similarly situated inquiry; Gustin's attempts to identify similarly situated younger employees treated more favorably are unavailing.

### 1. The Layoff

Gustin asserts that, for purposes of her layoff, she is similarly situated to Maudlin and Tyskzkiewicz because all three worked in the same department in supervisory roles. To further bolster this claim, Gustin emphasizes that she was often called upon to complete many of Maudlin and Tyskzkiewicz's job duties.[2] Working in the same department but with different supervisory roles or general responsibilities is insufficient to meet the similarly situated prong. *See, e.g., Rucker v. Illinois Dept. of Child & Family Servs.* 326 Fed. Appx. 397, 399 (7th Cir. 2009); *Burks v. Wisconsin Dept. of Transportation*, 464 F.3d 744, 751 (7th Cir. 2006).

Here, Gustin did not share supervisors with either Maudlin or Tyszkiewicz, in part because both outranked her. In fact, Gustin *reported to* Tyszkiewicz at the time of her layoff. As for Maudlin, he was not even part of Sales Support; he was the Director of the Marketing Department. Thus, Gustin cannot make a *prima facie* case with respect to her discharge. *See, e.g., Larson v. Portage Twp. Sch. Corp.*, 293 Fed. Appx. 415, 419-20 (7th Cir. 2008) (principal and the subordinate teacher were not similarly situated due to differing responsibilities, supervision, etc.).

---

[2] By way of affidavit, Gustin suggests that both Maudlin and Tyskzkiewicz lacked the know-how to do their jobs. Such insinuations are nothing more than speculation and are therefore inadequate to create genuine issues of material fact. *See Drake v. Minnesota Mining & Manufacturing Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite *specific concrete facts* establishing the existence of the truth of the matter asserted.") (emphasis added; citation and internal quotation omitted); *Scaife v. Cook County*, 446 F.3d 735, 741 (7th Cir. 2006) ("Self-serving affidavits without factual support in the record will not defeat a motion for summary judgment."). In the end, though, this point is academic. The Court's decision in no way turns on these statements.

### 2. MBA Tuition Reimbursement

Gustin asserts that, for purposes of her denied reimbursement, she is similarly situated to employees Geoff Wood and Scott Lawson. Both Wood and Lawson are under 40 and were reimbursed for MBA classes. By contrast, Gustin and Terry Key (also over 40) were denied tuition assistance for the MBA program.

Gustin's comparisons are overly simplistic, ignoring that the employees approved by Schneider for tuition reimbursement in relation to a graduate degree had obtained, at a minimum, conditional acceptance into a graduate program and were authorized by a university to take the graduate courses for which they were seeking reimbursement. Therefore, Gustin is not similarly situated to any individuals who received graduate program reimbursement. *See, e.g.*, *Bernales v. Mercy Health Sys.*, 128 Fed. Appx. 516, 518-19 (7th Cir. 2005) (plaintiff was not similarly situated to alleged comparators as he had to meet additional requirements – which his alleged comparators had already met – before becoming eligible for a license); *EEOC v. Our Lady of the Resurrection Medical Ctr.*, 77 F.3d 145, 151 (7th Cir. 1996) (plaintiff was not similarly situated to coworker who was immediately eligible to take an exam).

Gustin believes that this reasoning is specious: "This distinction is without substance because there would have been no reason for Ms. Gustin to seek admittance to the program, having already had her application for tuition assistance denied." (Dkt. 34 at 13). To the contrary, requiring an employee to gain admission to a program before seeking reimbursement strikes the Court as perfectly logical as not every person that seeks admission into a graduate program is able to gain admission. Further, it requires employees to show they are serious about furthering their education. Moreover, Gustin's comparison also ignores the fact that she chose not to take the prerequisite course after receiving reimbursement approval on a prior occasion.

For these reasons, Gustin cannot make out a *prima facie* case with respect to her tuition reimbursement claim.

### 3. Performance Review and Raise

Gustin's final alleged adverse employment action is that she did not receive a timely performance review in 2007, which effectively deprived her of an annual raise. In light of the economic downturn and her allegedly mediocre performance, Gustin's certitude that she was destined to receive a pay raise strikes the Court as presumptuous. As Schneider noted by way of affidavit, "[p]ay raises are not automatic…nor are they mandated in circumstances in which an employee's performance is less than acceptable." Nevertheless, this is a moot point, as Gustin fails to identify a similarly situated coworker.

In an attempt to buttress her claim, Gustin points to Megan Stacker ("Stacker"), who is under 40 years old and allegedly received a performance review from Tyszkiewicz. However, Gustin's argument is entirely predicated on speculation and indefinite hearsay testimony. *Fed. R. Evid.* 801, 802; *Haywood v. Lucent Techs.*, 323 F.3d 524, 533 (7th Cir. 2003) (hearsay will not overcome summary judgment motion). Moreover, Gustin's evidence does not establish that Stacker received any sort of pay raise. Once again, Gustin's *prima facie* case flounders on the final prong.[3] Accordingly, summary judgment is warranted under the indirect method of proof.

## B. The Direct Method

Under the direct method, a plaintiff must prove age discrimination through direct or circumstantial evidence of discriminatory motivation. *Rudin v. Lincoln Land Comm. College*, 420 F.3d 712, 720 (7th Cir. 2005). "Direct evidence is evidence which, if believed by the trier of

---

[3] Assuming *arguendo* that Gustin could make out a *prima facie* case for each of her adverse employment actions, she still could not establish that the legitimate, non-discriminatory reasons provided by Schneider are pretextual. Gustin's position that she worked long hours does not overcome the fact that her supervisors expressed concerns regarding her performance, work ethic, attitude and outside real estate business.

11

fact, will prove the particular fact in question without reliance upon inference or presumption." *Id.* (citation and internal quotations omitted). Not surprisingly, Gustin does not have direct evidence. After all, even the most heedless discriminator rarely provides such evidence, given its overt and damning nature.

However, "a plaintiff can also establish an inference of discrimination under the direct method by relying on circumstantial evidence." *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009). Examples of such circumstantial evidence include suspicious timing; ambiguous statements, behavior, or comments directed towards other employees in the protected age group; systematically better treatment of employees outside the protected age group; and pretextual reasons given for the adverse employment action. *Id.* at 1114-15.

Here, Gustin argues that she can stitch together a discrimination case using three pieces of circumstantial evidence. First, Gustin claims that Schneider's economic hardship excuses are disingenuous because during the time that it attempted to "control costs," it purchased companies, added new office locations, incurred interior design expenses, held posh events, and allowed management to go on retreats. Nonetheless, Gustin's argument – which fails to list dates on which the expenditures were made – ignores the fundamental fact that Schneider was ravaged by the recession, laying off 42 employees in January 2008 and many more after that. Additionally, it is unclear how a company's arguably imprudent expenditures establish age-based animus. Finally, by making this argument, Gustin effectively invites the Court to pierce into Schneider's discretionary business judgments and substitute its decisions for that of Schneider's management. Seventh Circuit law is clear that such invitations should be rejected. *See, e.g., Chiaramonte*, 129 F.3d at 401 (declining to find "a presumption of discrimination whenever a company expended resources in an attempt to increase profitability in a time of financial

hardship" because "management has the discretion to determine how and where to achieve necessary cost savings").

Second, Gustin trumpets Schneider's "endorsement" of SYP as evidence of its ageism. However, the credible evidence suggests that SYP was completely innocuous and open to all of Schneider's employees. Gustin somewhat exaggerates the situation, citing the fact that SYP "sponsored outings to recreational facilities and other locales favored by the younger crowd, and went so far as to print up T-shirts for the members of the 'SYP' group to wear in the workplace." (Dkt. 34 at 17). Gustin does not specify the nature of these "locales." And, in this modern age of ever-evolving medical technology, countless older people enjoy "recreational facilities." Finally, because comfort knows no age barriers, young and old alike regularly wear t-shirts. Ultimately, Gustin's SYP references are quite speculative.

Finally, Gustin claims that upper level Schneider employees demonstrated preference toward younger employees through comments made in the workplace. On one occasion, Maudlin stated, "take it easy on Christine, she's young." Additionally, Maudlin commented that "no one older can do business development." Finally, Schneider's web designer, Keith Willoughby, spoke disparagingly of older employees' technological acumen, stating they "may not be able to open an email…[a]n older person may not know how to open a link." (Gustin Dep. pg. 245:8-21). Although perhaps inartful, these statements were quintessential "stray remarks," which are "insufficient to establish that a particular decision was motivated by discriminatory animus." *Hemsworth*, 476 F.3d at 491. Perhaps more important, none of these remarks can be attributed to a relevant decisionmaker for purposes of Gustin's alleged adverse employment actions. *Martino*, 574 F.3d at 453 n.1 (non-decisionmaker's comments "don't qualify as evidence of discriminatory intent"). Unfortunately for Gustin, her proffered

13

circumstantial evidence falls far short of the "convincing mosaic" of circumstantial evidence as established by case law that is required under the direct method of proof. Accordingly, summary judgment is warranted.

## IV. **CONCLUSION**

For the reasons set forth above, Defendant's Motion for Summary Judgment (Dkt. 28) is **GRANTED**.

SO ORDERED: 04/19/2011

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

David M. Henn
MCCLURE MCCLURE DAVIS & HENN
dhenn@mmdhlaw.com, cwilde@mmdhlaw.com, chill@mmdhlaw.com

Koryn Michelle McHone
BARNES & THORNBURG LLP
kmchone@btlaw.com, melissa.nichols@btlaw.com

Richard P. Winegardner
BARNES & THORNBURG LLP
rwinegar@btlaw.com, amy.wessling@btlaw.com